# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5009 | **DATE** | 1/5/2004 |
| **CASE TITLE** | Alpha School Bus Co. vs. Wagner et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] REPORT AND RECOMMENDATION is hereby submitted to Judge Gottschall recommending that the District Court DENY plaintiff Alpha's request for preliminary injunction [36-2] for the reasons stated in the attached Report and Recommendation. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir. 1995).
(11) ■ For further detail see order attached to the original minute order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 06 2004 | |
| | Notified counsel by telephone. | | date docketed | 87 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 1/5/2004 | |
| | | | date mailed notice | |
| KF | courtroom deputy's initials | 04 JAN -5 PM 10:39 | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALPHA SCHOOL BUS COMPANY, INC., and COOK-ILLINOIS CORP.,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL W. WAGNER, BARBARA ANN HACKEL, LEROY MIESTER, SOUTHWEST TRANSIT, INC., CHICAGO BEAR BONES LEASING, INC., and SOUTHWEST TRANSIT LEASING, LLC, SUNRISE SOUTHWEST, L.L.C., SUNRISE TRANSPORTATION, INC.<br><br>Defendants. | **DOCKETED**<br>JAN 0 6 2004<br><br>Case No. 03 C 5009<br><br>Judge Joan B. Gottschall<br><br>Mag. Judge Michael Mason |

## REPORT AND RECOMMENDATION

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Alpha School Bus Company, Inc., ("Alpha"), filed a complaint and motion for preliminary injunction against defendants Michael Wagner ("Wagner"), Barbara Hackel ("Hackel"), Southwest Transit Inc. ("Southwest"), Southwest Transit Leasing LLC, Chicago Bear Bones Leasing, Inc., and Leroy Miester ("Miester"), alleging among other claims, violation of the Sherman Antitrust Act, 15 U.S.C. §1, violation of the Racketeer Influenced and Corruption Organization Act ("RICO"), 18 U.S.C. §1961 et. seq., breach of fiduciary duty and civil conspiracy. Prior to the hearing on the preliminary injunction, Alpha reached an agreement with all of the defendants except Miester. The District Court referred this matter to us to conduct a hearing on the



motion, which we held on October 28-29, 2003[1] solely as to defendant Miester. For the following reasons, we recommend that the District Court DENY the motion. In rendering this decision, the Court has considered the testimony of the witnesses, the documents admitted into evidence, the pre-hearing and post-hearing arguments and briefs of the parties and the relevant case law. Pursuant to Fed. R. Civ. P. 52, we make the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Alpha is a school bus contractor located in Crestwood, Illinois and is a wholly owned subsidiary of Cook-Illinois. Alpha provides busing services for a number of school districts in the Chicagoland area. Specifically, in the beginning of 2003, Alpha provided busing services for the Chicago Public Schools ("CPS"), Southwest Cook County Cooperative Association for Special Education ("SWCCCASE") and School Districts 135 and 218, among others.[2] At that time, Wagner was Alpha's General Manager in charge of the day-to-day operations of Alpha and one of its corporate officers. Miester was Alpha's Director of Operations, but was not a director or officer. His job functions included hiring all of Alpha's bus drivers, participating in the preparation of Alpha's transportation contract bid proposals[3], corresponding with the

---

[1] We also heard approximately fifteen minutes of irrelevant testimony from a defense witness on October 31, 2003.

[2] Alpha is only requesting injunctive relief as to the CPS and SWCCCASE contracts and therefore the other contracts are not at issue.

[3] Miester denied ever preparing Alpha's bids. However, based on the credible testimony of Bruce and Benish Jr., we find that Miester did participate in the preparation of Alpha's bids.

school districts and overseeing Alpha's bus routing.

By the end of 2002, Wagner, Miester and Hackel (collectively "Named Defendants") had agreed to start a new bus contracting company named Southwest, and planned to locate it across the street from Alpha. The Named Defendants intended Southwest to be a direct competitor of Alpha. Between December, 2002 and January, 2003, Wagner and Miester told their assistants at Alpha, Nancy Bruce ("Bruce") and Kristi Glass ("Glass"),[4] that they were going to leave Alpha to work for a new bus contracting company, later identified as Southwest. In the first quarter of 2003 and while Wagner and Miester were still employed at Alpha, the transportation contracts for CPS, SWCCCASE and Districts 135 and 218 opened for competitive bidding.[5] Wagner and Miester participated in preparing bids for the CPS, SWCCCASE and District 218 contracts on behalf of both Alpha and Southwest.[6] Each if these three transportation contracts were eventually awarded to Southwest over Alpha, ending Alpha's ten year contractual relationship with CPS and SWCCCASE.

After Alpha lost the SWCCCASE transportation contract to Southwest on March 19, 2003, Wagner and Miester notified Alpha of their intent to retire. Miester gave Wagner a resignation letter dated March 20, 2003 and effective June 1, 2003. After eighteen years with Alpha, Miester and his wife Claudia, also an Alpha employee,

---

[4]Both Bruce and Glass testified at the hearing. Bruce was Wagner's assistant and Glass was an assistant to both Wagner and Miester.

[5]The busing contracts open for competitive bidding were each set to commence with the 2003-04 school year.

[6]No evidence was presented at the hearing as to who prepared the bid proposals submitted to District 135.

informed the company that they would be leaving to retire to Mississippi where Mrs. Miester's family resides. In anticipation of Miester's retirement, Wagner prepared a benefit report that he and Miester signed on March 25, 2003. According to the report, Alpha owed Miester $20,466.90 in compensation for unused vacation and sick leave and other additional bonuses. This report overstated Miester's unused leave because shortly before its creation, Wagner instructed Glass to add additional unearned vacation and sick leave to Miester's personnel file.[7] Also in March, 2003, Miester asked Bruce to calculate the billing revenue for CPS, SWCCCASE and District 218. Around April, 2003, Miester asked Glass to copy all of Alpha's payroll documents for him, including the employees' address information and social security numbers. Then on April 4, 2003, Wagner submitted his resignation letter to Cook-Illinois effective April 13, 2003.

Sometime after the school districts awarded their transportation contracts to Southwest, John Benish Jr. ("Benish Jr."), the Chief Operating Officer at Cook-Illinois, asked Miester to contact Nancy Ranquist ("Ranquist"), the executive director of SWCCCASE, to obtain a copy of Southwest's bid proposal for the SWCCCASE transportation contract. Ranquist provided Miester with the report, which listed Miester as Southwest's Vice President. Shortly thereafter, Miester learned that Benish Jr. and other Cook-Illinois employees planned to visit Ranquist to discuss SWCCCASE's decision to award Southwest its transportation contract. Miester called Ranquist to tell her that Benish Jr. and the others were coming and asked that she not say anything

---

[7]Wagner also instructed Glass to add unearned vacation and sick leave to her own personnel file and those of numerous other Alpha employees.

4

about him. In her deposition, Ranquist stated that prior to SWCCCASE's decision to award its transportation contract to Southwest, Miester told her that he would be working for Southwest in a role similar to his current role at Alpha.

On May 23, 2003, Miester's last day at Alpha, he met with Marco Moreno, Cook-Illinois' Chief Financial Officer, to discuss adequate compensation for his unused vacation and sick leave. They agreed to the amount of $23,234.65, conditioned on Miester executing a valid noncompetition agreement ("Agreement") with Alpha. After consulting an attorney, Miester refused to sign the Agreement and Alpha refused to release the $23,234.65.[8] Ten days later, on June 3, 2003, Miester signed a ten year employment contract with Southwest and a covenant not to compete, without seeking any legal advice.[9] Based on these facts, we find that Miester did not leave Alpha to retire to Mississippi, but rather left to work for Southwest.[10]

Between the spring and summer of 2003, a majority of Alpha's mechanics, and all of its dispatchers and office workers, except Bruce and Glass, left to join Southwest.

---

[8] At the hearing, Miester could not explain why he refused to sign the Agreement. His refusal strongly suggests that he never planned on retiring to Mississippi in 2003, but rather intended to leave Alpha to work for Southwest. If Miester truly planned on retiring to Mississippi with his wife, his refusal to sign the Agreement was irrational. The Agreement was not enforceable in Mississippi and its execution would not have affected Miester's retirement plans.

[9] Miester's explanation for signing a ten year employment contract with Southwest ten days after his "retirement" is similarly irrational. Miester testified that he contacted Southwest about a job because without the $23,234.65, he could not afford to retire. However, had Miester signed the Agreement, Alpha would have provided him with the $23,234.65 he needed to retire.

[10] This conclusion is supported by the credible testimony of the other four witnesses at the hearing and the deposition testimony of Nancy Ranquist. Having found Miester's testimony not credible on this issue, we also find the remainder of his testimony at the hearing not credible and self serving.

Additionally, somewhere between 35 and 80 of Alpha's bus drivers started working for Southwest. Miester was instrumental in Southwest's acquisition of some of these employees. While at Alpha, Miester had a comprehensive list of Alpha's bus drivers and their contact information. At the hearing, Miester admitted that as a Southwest employee he used the list to contact eight Alpha drivers and successfully recruit five to work for Southwest.[11]

Southwest's dates of operation are not entirely clear. Alpha was aware of Southwest by March, 2003 when Southwest won the SWCCCASE transportation contract. Alpha was also aware of Wagner and Miester's possible involvement with Southwest shortly thereafter when it obtained a copy of Southwest's bid proposal for the SWCCCASE contract, listing Wagner as the President and Miester as the Vice President. Southwest began servicing CPS, SWCCCASE and District 218 in the summer of 2003.

However, Alpha did not file suit against Southwest and the Named Defendants until July 18, 2003 and agreed to a preliminary injunction hearing date in late October, 2003. During the pendency of this case, Southwest experienced some financial difficulties after its line of credit was cancelled, but was able to arrange for a new company to step in and fulfil its transportation contract obligations. Southwest contacted Sunrise Transit, Inc. and on September 19, 2003, Sunrise Transit, Inc. formed Sunrise Southwest LLC ("Sunrise"). Sunrise began operating out of

---

[11] While working for Alpha, Miester also unsuccessfully tried to recruit Bruce, Glass and Scott Skolek, a mechanic for Alpha's sister company Chicago School Transit, to join him at Southwest.

Southwest's former premises sometime thereafter and we believe purchased substantially all of Southwest's assets. Sunrise retained all of Southwest's employees and equipment. In fact, Sunrise effectuated such a seamless transition that Miester did not know when he stopped working for Southwest and began working for Sunrise.[12] For a time after Sunrise began its operations, its business premises and buses still displayed the Southwest name and emblem. Before this hearing, Sunrise obtained valid transportation contracts to provide CPS and SWCCCASE with busing services through the 2003-04 school year.

## CONCLUSIONS OF LAW

At the hearing, Alpha alleged that Miester breached his fiduciary duty to the company and participated in a civil conspiracy to harm it.[13] Alpha is now seeking a preliminary injunction to enjoin Miester from (1) providing any services for the CPS and SWCCCASE accounts on his own behalf or on behalf of any person or company; (2) using any of plaintiff's driver lists, route sheets or billing information; (3) soliciting

---

[12] The court and plaintiff were also not immediately aware of this transition. Plaintiff brought these developments to the Court's attention at an October 3, 2003 status hearing. On that date plaintiff also filed a motion for a temporary restraining order to enjoin the transfer of Southwest's assets and requested leave to file a third amended complaint to include Sunrise and its parent company Sunrise Transit, Inc.

[13] Alpha limited its arguments at the hearing and in its post-hearing brief to the breach of fiduciary duty and civil conspiracy claims and therefore our analysis is also limited to those claims. Because we recommend that an injunction not be issued on those claims, we also find that an injunction should not be issued as to any of Alpha's remaining claims. Alpha's federal jurisdiction stems from its Antitrust and RICO claims. This Court has not seen or heard any evidence to support those claims, calling into question whether this case belongs in federal court.

Alpha's employees; and (4) making any disparaging remarks concerning Alpha.[14]

In order to obtain a preliminary injunction, Alpha must satisfy five criteria. First, it must show: 1) some likelihood of success on the merits; 2) that no adequate remedy at law exists; and 3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001) (*citing Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). "If the court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Ty, Inc.*, 237 F.3d at 895. Last, the court considers whether and how the public interest will be affected if the injunction is granted or denied. *Id.* "This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.*

### Likelihood of Success on the Merits

*Breach of Fiduciary Duty*

In order to demonstrate a likelihood of success on the merits, Alpha must show that it has a better than negligible chance of success. *See Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). To succeed on the merits of a breach of fiduciary duty claim Alpha must show that Miester (1) actively exploited his position within the corporation for his own personal benefits; or (2)

---

[14] Alpha requested additional relief in its Statement of Requested Relief filed with the Court on October 24, 2003. However, in Alpha's most recent filing with this Court, its Amended Proposed Findings of Fact and Conclusions of Law ("Findings"), Alpha limited itself to these four requests. We will limit our discussion to the relief requested in the Findings.

hindered the ability of the corporation to conduct the business for which it was developed. Foodcomm Intl. v. Barry, 328 F.3d 300, 303 (7th Cir. 2003). A successful breach of fiduciary duty claim is not limited to directors and officers of a company. Id. at 304. An employee, as an agent of his employer, can be found to have breached his fiduciary duty to the company. Id. An employee can breach his fiduciary duty to the company if while under its employ he: (1) fails to inform the company that other employees are forming a rival company or engaging in other fiduciary breaches; (2) solicits the business of a single one of the company's clients; (3) uses the company's facilities or equipment to develop his new business; or (4) solicits fellow employees to join a rival business. Id. at 303.

Based on the evidence at the hearing, Alpha has established a significant likelihood of success on the merits of its breach of fiduciary duty claim. Although Miester was not an officer or director, he was an employee and agent of Alpha. As Director of Operations, Miester's job involved a significant amount of autonomy and discretion, hallmarks of a fiduciary. See Foodcomm, 328 F.3d at 304. As an agent and fiduciary of Alpha, Miester owed it certain duties and we find that at a trial on the merits, Alpha will likely prove that Miester breached those duties.

Miester testified that he was aware of Wagner's plans to start Southwest and that he did not inform any officers or directors at Alpha or Cook-Illinois of Wagner's plans. Moreover, Ranquist, in her deposition, stated that prior to Southwest's bid for the SWCCCASE transportation contract, Miester told her that he would be joining Southwest in a similar role to the one he was currently playing at Alpha. She also stated that his impending employment at Southwest was a factor that helped Southwest

secure the SWCCCASE transportation contract.

There was also evidence that Miester participated in preparing bids for the CPS and SWCCCASE transportation contracts on behalf of both Alpha and Southwest while employed at Alpha, and that he used Alpha's property to develop his new business. Bruce testified that Miester asked her to calculate the billing revenue Alpha was generating from the CPS, SWCCCASE and District 218 contracts, and Glass testified that Miester asked her to copy all of Alpha's payroll documents for him. We believe that these actions, if proved at trial, would constitute a breach of Miester's fiduciary duty.

In defense of this claim, Miester cites several cases. However, in two of those cases the court found a breach of fiduciary duty. We believe those cases actually support Alpha's claim. See Smith-Shrader Co., Inc. v. Smith, 136 Ill. App. 3d. 571, 577-79 (1st Dist. 1985); Cross Woods Products, Inc. v. Sutter, 97 Ill. App. 3d 282, 284-85 (1st Dist. 1981) (finding that the employee breached his fiduciary duty to his former employer). The other cases Miester relies on require that the employee terminate his employment relationship prior to undertaking the referenced actions. See Ellis & Marshall Accoc., Inc. v. Marshall, 16 Ill. App. 3d 398, 402-03 (1st Dist. 1973); Professional Service Corp. v. Johnson, 316 Ill. App. 431, 433-35 (1st Dist. 1942) (it is not improper for an employee to tell co-workers of his plans to form a rival company, so long as he does not actually solicit their services before he terminates the employment relationship). As we stated above, we find that Miester engaged in the referenced conduct **while** employed at Alpha, in addition to after his "retirement" and therefore likely breached his fiduciary duty to Alpha.

10

*Civil Conspiracy*

In order to succeed on the merits of its claim for civil conspiracy, Alpha must show "a combination of two or more persons [or entities] for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133 (1999). In Count III of its Third Amended Complaint ("Complaint"), Alpha alleged that Miester and others "knowingly agreed to rig the bids on the SWCCCASE contract in violation of Section 33E-3 of the Illinois Criminal Code and the federal and state antitrust laws". (Complaint ¶ 38). However in its Findings, Alpha argues that it has shown a likelihood of success on the merits of its civil conspiracy claim because it established that Miester and Wagner conspired to breach their fiduciary duties of loyalty to Alpha. (Findings ¶ 33).

In order to establish a likelihood of success on the merits of its claim at trial, Alpha must present evidence to support the claims in its Complaint. Alpha's Complaint does not state a claim for civil conspiracy resulting from concerted action on the part of Miester and Wagner to breach their fiduciary duties to Alpha. The Complaint alleged a concerted effort by Miester and Wagner to rig Southwest and Alpha's bids in violation of state and federal antitrust laws. At the hearing Alpha did not present any evidence regarding its antitrust claims and therefore failed to establish a likelihood of success on the merits of its civil conspiracy claim as stated in its Complaint.

**Inadequate Remedy at Law and Irreparable Harm**

Because Alpha has established a likelihood of success on the merits of its breach of fiduciary duty claim, we now address whether Alpha has established an

11

inadequate remedy at law and irreparable harm. We are mindful that under the sliding scale approach, having found a significant likelihood of success on the merits of its breach of fiduciary duty claim, Alpha's burden on the remaining two elements is minimal. However, Alpha failed to meet this low threshold because it could not establish that money damages are not adequate or that it will suffer any irreparable harm if the injunction is not granted.

In determining whether plaintiff has shown irreparable harm if the injunction is not granted, we keep in mind the purpose of a preliminary injunction; to preserve the relative position of the parties until a permanent injunction can be issued or there is a trial on the merits. *Meridian Mutual Ins. Co. v. Meridian Ins. Group Inc.*, 128 F.3d 1111, 1119 (7th Cir. 1997). The purpose of a preliminary injunction is to maintain the status quo, not to give the moving party affirmative relief equivalent to the ultimate relief sought. *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1240 (7th Cir. 1985). Where competitive injury has already occurred, an injunction that restrains the defendant from competing with the plaintiff during the pendency of the lawsuit does not serve to preserve the status quo. *Marchlett Laboratories, Inc. v. Techny Indust., Inc.*, 665 F.2d 795, 796 (7th Cir. 1981). Moreover, "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001).

It is undisputed that Alpha was aware of Southwest by March 19, 2003, when Southwest secured the SWCCCASE contract. Around that time, Alpha also knew that two of its top employees, Wagner and Miester, were retiring and that their names were

12

listed on the bid proposal Southwest submitted to SWCCCASE. The spring of 2003 was the time for Alpha to seek a preliminary injunction. Now, nine months later, Sunrise has secured valid contracts to provide CPS and SWCCCASE with busing services through the 2003-04 school year. Additionally, Miester has been the Director of Operations at Southwest, now Sunrise, for the last seven months. To grant plaintiff's requested relief and enjoin Miester at this point would not preserve the status quo. Alpha's requested relief may have been appropriate seven months ago, but now would only serve to provide plaintiff with some of the ultimate relief it seeks.

Additionally, Alpha has not provided any evidence that its standing in the market will be further diminished if injunctive relief is not granted. Alpha is requesting that we enjoin Miester from working on the CPS and SWCCCASE contracts, using its proprietary information, soliciting its employees and making disparaging comments. At this point in time, the harm, if any, from these actions has already occurred. Any Alpha employees who wanted to work at Sunrise are already there. Moreover, any harm from Sunrise using Alpha's driver lists, route sheets and billing information has already occurred. Sunrise's staff is composed of almost exclusively former Alpha employees, yet Alpha only seeks to enjoin Miester. We cannot imagine how solely enjoining Miester could prevent the alleged harm. Sunrise's other employees are more than capable of servicing the CPS and SWCCCASE contracts. Enjoining Miester is Alpha's attempt to punish rather than deter and cannot justify the issuance of a preliminary injunction. *Rondeau v. Mosiness Paper Corp.*, 422 U.S. 49, 61-2 (1975).

In light of the above discussion we find that allowing Miester to continue to work at Sunrise on the CPS and SWCCCASE contracts will not cause Alpha irreparable

harm. Any harm to Alpha from Miester's alleged actions has already occurred.

Finally, in order to establish that there is no adequate remedy at law, Alpha must show that money damages are inadequate. *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1240 (7th Cir. 1985). We find that Alpha's alleged damages are quantifiable and can be remedied monetarily. Benish Jr. estimated that Alpha's gross revenue for the 2003-04 school year declined by $2,000,000, as a result of losing the CPS, SWCCCASE and District 218 business. He also testified that Alpha made anywhere from a seven to seventeen percent profit margin on the transportation contracts at issue. Using a seventeen percent profit margin, Benish Jr. estimated that Alpha lost $340,000.00 in profit from the loss of those contracts. This is direct evidence that Alpha's alleged damages are readily quantifiable.

We also find that there was not sufficient evidence at the hearing to support Alpha's claim that a judgment for money damages would be worthless. While it does not appear that Miester could satisfy a large monetary damage award, no evidence was produced regarding Sunrise's financial condition or the financial condition of its parent company.

## BALANCE OF HARMS AND PUBLIC POLICY

Because we find that Alpha cannot prove either an inadequate remedy at law or irreparable harm, we do not need to reach the next factors, harm to Miester or the public interest.

**CONCLUSION**

For the reasons stated above, we recommend that the District Court DENY Alpha's request for a preliminary injunction. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the rights to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

MICHAEL T. MASON
United States Magistrate Judge

**Dated:** January 5, 2004