# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5009 | **DATE** | 6/15/2004 |
| **CASE TITLE** | Alpha School Bus Co. vs. Wagner, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, defendant Meister's motion to dismiss [76-1] and defendants Wagner's, Hackel's, Bear Bones Leasing, Inc.'s, Southwest Transit, Inc.'s, and Southwest Leasing L.L.C.'s motion to dismiss [89-1] are granted. Because plaintiffs fail to state a claim under federal law and there is no other basis for this court's jurisdiction, the court will not address the merits of plaintiffs' state law claims. Case dismissed for lack of jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 17 2004 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | docketing deputy initials | 136 |
| X | Copy to judge/magistrate judge. | | |
| RJ/KB | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Alpha School Bus Company, Inc., and )
Cook-Illinois Corp.,                 )
                                     )
                Plaintiffs,          )
                                     )   Case No. 03 C 5009
        v.                           )
                                     )   Honorable Joan B. Gottschall
Michael W. Wagner, Barbara Ann       )
Hackel, Leroy Meister, Southwest     )
Transit, Inc., Chicago Bear Bones    )
Leasing, Inc., and Southwest Transit )
Leasing, LLC, Sunrise Southwest,     )
L.L.C., Sunrise Transportation, Inc., )
                                     )
                Defendants.          )

## MEMORANDUM OPINION AND ORDER

Before the court are defendants' motions to dismiss plaintiffs' Alpha School Bus Co.'s ("Alpha") and Cook-Illinois Corp.'s ("Cook-Illinois") Third Amended Complaint for failure to state a claim and for lack of subject matter jurisdiction. Addressing the jurisdictional arguments first, *Baker v. IBP, Inc.*, 357 F.3d 685, 687 ("subject matter jurisdiction is the first question . . . in all suits filed in federal court"), defendants Southwest Transit, Inc. ("Southwest"), Southwest Leasing, L.L.C. ("Southwest Leasing"), Chicago Bear Bones Leasing, Inc. ("Bear Bones Leasing"), Barbara Ann Hackel, Michael Wagner, and Leroy Meister contend that this court lacks jurisdiction because plaintiffs fail to establish a violation of federal law in their allegations that defendants violated the Sherman Act, 15 U.S.C. § 1, *et seq.*, and the Racketeer

-1-

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.[1] For the reasons that follow, defendants' motions to dismiss are granted.

## I. Background

Alpha is a school bus contractor located in Crestwood, Illinois, and is a wholly owned subsidiary, along with twelve other subsidiaries licensed as interstate carriers of passengers, of Cook-Illinois. Alpha provides student transportation services for a number of school districts in the greater Chicago and Cook County, Illinois, area. At issue in this case are the 2003-2006 contracts for busing services for the Chicago Board of Education non-public routes, Southwest Cook County Cooperative Association for Special Education, and Oak Lawn School District 218 (collectively, the "School Bus Contracts"). In the spring of 2003, when Alpha prepared and submitted its bids to the Chicago Board of Education, Southwest Cook County Cooperative Association for Special Education, and Oak Lawn Board of Education (collectively, the "School Districts"), Michael Wagner and Leroy Meister were employed by Alpha as General Manager and Director of Operations, respectively. According to Alpha, both men had access to confidential Alpha business information, including details of Alpha's past and present contracts with the School Districts (for many years prior to 2003, Alpha

---

[1] The remaining named defendants in this case, Sunrise Southwest, L.L.C., and Sunrise Transportation, Inc., filed a motion to dismiss the state law claims against them for failure to state a claim. However, since they were not named in plaintiffs' Sherman Act or RICO claims, they did not join the other defendants in moving to dismiss the claims for lack of jurisdiction. Therefore, unless otherwise specified, all references to "defendants" in this case refer only to Southwest, Southwest Leasing, Bear Bones Leasing, Hackel, Wagner, and Meister.

provided busing services to all three districts), and both helped prepare Alpha's bid for the School Bus Contracts for 2003-2006.

In addition to incumbent contract holder Alpha, a number of other transportation companies also bid for the 2003-2006 School Bus Contracts; the winner was Southwest. Southwest is an Illinois corporation, owned and controlled by Barbara Hackel, that provides busing services in competition with Alpha. Southwest Leasing, an Illinois limited liability company, and Bear Bones Leasing, a *de jure* or *de facto* Illinois corporation, are owned and controlled by Wagner and operate to lease buses to Southwest. Plaintiffs allege that Hackel, Wagner, and Meister contracted to form Southwest and the leasing companies, and that together they conspired to underbid Alpha for the School Bus Contracts and eliminate Alpha as a competitor in the special education student transportation business.

According to the complaint, Wagner and Meister were still employed by Alpha when they stole Alpha's confidential bid information and gave it to Hackel and Southwest, who then used it to prepare Southwest's bid for the School Bus Contracts. As a result of Wagner's, Meister's, Hackel's and Southwest's allegedly unlawful conduct, Southwest submitted a lower bid to the School Districts and won the 2003-2006 contracts. Soon after the contracts were awarded to Southwest, Wagner and Meister notified Alpha of their intent to retire and began working for Southwest and the leasing company defendants.

In summer of 2003 Plaintiffs filed suit in federal court, arguing that defendants' conduct amounted to forbidden restraint of trade under the federal and state antitrust

laws, civil conspiracy, violation of Illinois trade secret laws, tortious interference with business opportunity, breach of fiduciary duty, racketeering, and fraudulent transfer of assets. Defendants moved to dismiss all claims against them. Because federal jurisdiction in this case depends on the existence of a claim under either the Sherman Act or RICO, the court's opinion will address these claims first.

## II. Discussion

### A. Standard of Review

In considering a motion to dismiss for lack of jurisdiction, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003). Plaintiffs here assert that federal jurisdiction exists because defendants violated the Sherman Act, 15 U.S.C. § 1, and RICO, 18 U.S.C. § 1962. *See* 28 U.S.C. § 1337. Defendants, however, contend that this court is without jurisdiction because plaintiffs have failed to state a claim under either federal statute.

Plaintiffs' federal claims are subject to two different standards of pleading under the Federal Rules of Civil Procedure. For plaintiffs' antitrust claim to survive, it must provide a short and plain statement which demonstrates that plaintiffs suffered an injury caused by defendants' restraint of interstate commerce. *Midwest Gas Servs. v. Indiana Gas Co.*, 317 F.3d 703, 711 (7th Cir. 2003); FED. R. CIV. P. 8(a). Importantly, plaintiffs' injury must be an "antitrust injury – which is to say, injury by reason of those things that make the practice unlawful, such as reduced output and higher prices," as opposed to mere economic loss. *Gypsum Co. v. Indiana Gas Co.*, 350 F.3d

623, 626-27 (7th Cir. 2003); *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2001). For plaintiffs' RICO claims alleging predicate acts of mail and wire fraud to survive, they must describe with particularity "the identity of the person who made the [mis]representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001); FED. R. CIV. P. 9(b). A successful RICO claim also requires a plaintiff to show that his injury was proximately caused by defendants' racketeering activity. *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992). Since plaintiffs fail to state a claim under either federal law and they assert no other basis for federal jurisdiction, this case must be dismissed pursuant to FED. R. CIV. P. 12(h)(3).

## B. Sherman Act Antitrust Claim

Section 1 of the Sherman Act, which defendants' act of underbidding Alpha for the School Bus Contracts by using Alpha's confidential information is alleged to violate, forbids conspiracies in restraint of trade or commerce among the states or with foreign nations. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002). Though all an antitrust claim need allege to survive a motion to dismiss is that a plaintiff suffered an injury due to a defendant's unlawful restraint of interstate commerce, *Midwest Gas*, 317 F.3d at 711, it is quite possible for a plaintiff to plead himself out of court by alleging facts that could not under any circumstances constitute an antitrust violation, *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774,

782 (7th Cir. 1994). Plaintiffs in this case have done exactly that.

A successful claim under § 1 of the Sherman Act requires proof that (1) a contract, combination, or conspiracy between two or more persons (2) to restrain interstate commerce in the relevant market (3) caused an injury of the sort Congress intended to prevent by enacting the antitrust laws. *See Denny's Marina Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993); *Hammes*, 33 F.3d at 782. Defendants here argue that plaintiffs fail to establish a § 1 violation in all respects, including (1) failure to plead a sufficient nexus with interstate commerce, (2) failure to show a conspiracy among market competitors, and (3) failure to allege an antitrust injury.

Though not artfully pleaded, plaintiffs' allegations of a nexus with interstate commerce are sufficient to withstand defendants' motions to dismiss. An antitrust claim requires an improper purpose, an anticompetitive effect, and an effect on interstate commerce. *See BCB Anesthesia Care, Ltd. v. Werries*, 36 F.3d 664, 666 (7th Cir. 1994). The interstate commerce requirement is jurisdictional in antitrust suits, *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 948 (7th Cir. 2003), and the court must assure itself from allegations in the complaint that it is not about to hear a case that it is not supposed to have the power to hear. *Hammes*, 33 F.3d at 778. In diversity suits, for example, the complaint must allege the citizenship of the parties and the amount in controversy, not just that the claim is within the diversity jurisdiction. *Id.* "But when the jurisdictional prerequisite is effect on interstate commerce, the pleading of a conclusion should be good enough, since the number of

cases that fail at that threshold has become minuscule." *Id.* Here, plaintiffs claim that "Student transportation services [including the School Bus contracts at issue] . . . and the competitive bidding process to let those contracts, affect interstate commerce." Given the low threshold for satisfying the interstate commerce nexus in antitrust suits, *see Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 333 (1991), and liberal federal pleading standards, plaintiffs' allegations in this case are sufficient to establish this court's jurisdiction.

Defendants also argue that plaintiffs' Sherman Act claim must be dismissed for failure to allege a conspiracy. Plaintiffs contend that defendants Wagner, Meister, Southwest Leasing, and Bear Bones Leasing conspired with Hackel and Southwest to restrain trade. The complaint also asserts that Wagner and Meister were employed by Alpha at the time of the alleged conspiracy. It appears from the complaint, and plaintiffs' brief confirms, that Wagner and Meister acted solely to benefit Southwest, Hackel, and the leasing defendants. Thus, defendants argue, Wagner and Meister are either agents acting on behalf Southwest and therefore cannot conspire with their principal, or are employees of Alpha and therefore Alpha cannot recover for damages incurred through its own conspiracy with Southwest. Plaintiffs' response to defendants' argument is confounding, as it argues simultaneously that Wagner and Meister are not agents of Southwest because they are Alpha employees and that Alpha is not responsible for their actions because Wagner and Meister were acting on behalf of Southwest. The court need not decipher this illogic, however, because as explained below, there is a possibility, however slight, that the complaint alleges a conspiracy

between Southwest and the leasing defendants to restrain trade.

An antitrust conspiracy requires an agreement between two or more persons to restrain trade in a given market. *Denny's Marina*, 8 F.3d at 1220. Usually, as in a *per se* violation of § 1, the conspirators are direct competitors in the market. Sometimes, however, as in the case of a clothing manufacturer attempting to eliminate competition among retailers of its products, a single individual may attempt, by conspiring with market competitors, to control a market from the outside. *See, e.g., 42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401 (7th Cir. 2002). In the latter case, the non-market conspirator must have some kind of "market power," or ability to raise prices above a competitive level without losing its business, to be found capable of restraining trade in the relevant market. *Id.* at 404-5.

Of all the named defendants in this case, only Southwest actually competes with Alpha in the relevant market. The complaint does not specifically define the market, but the court presumes from facts therein that it is the market for special education student transportation services in the greater Chicago and Cook County, Illinois, area. Though plaintiffs charge the individual defendants, Meister and Wagner, and the leasing company defendants, Southwest Leasing and Bear Bones Leasing, with conspiring to restrain trade, none of these defendants provides student transportation services and none of them is alleged to have the kind of market power that would enable them to control competition in the busing market. If this is true, only Alpha and Southwest would be capable of the "bid-rigging" and "price-fixing" conduct complained of here, and Alpha would have no cause of action to recover for its own

-8-

illegal activities. *See 42nd Parallel North*, 286 F.3d at 405 ("[a]ntitrust laws protect competition, not competitors").

But the court cannot draw this inference against plaintiffs in ruling on a motion to dismiss. Plaintiffs allege repeatedly that "Wagner, Meister, Chicago Bear Bones and Southwest Leasing together with Hackel and Southwest" conspired to restrain trade. Since the court must take this and other facts in the complaint as true, and since plaintiffs need not allege the market power of potential conspirators to state a claim under § 1, the court must assume that the individual and leasing company defendants were in fact capable of conspiring with Southwest and Hackel to commit the alleged antitrust violation.

Though the court finds that plaintiffs have pleaded an interstate commerce nexus and a conspiracy, their antitrust claim still must fail because plaintiffs have not alleged an antitrust injury. An antitrust injury is an injury caused by the kind of conduct that the antitrust laws seek to prevent. *Brunswick Corp. v. Peublo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The antitrust injury doctrine was created as a way to screen out complaints by competitors and others who were hurt not by anticompetitive practices, but by productive efficiencies, higher output, and lower prices – the very things antitrust laws are designed to encourage. *Gypsum*, 350 F.3d at 627. Thus, a plaintiff competitor who seeks a kind of relief that would injure customers, such as less competition or higher prices for his product, does not suffer antitrust injury. *Id.* Similarly, a defendant competitor who undertakes to squeeze out his market competitors by underbidding them or increasing output or discounting

prices does not cause an antitrust injury, *unless* his activities are undertaken in concert with another competitor and involve anticompetitive conduct like fixing prices, shorting supply, or tying.

In the instant case, defendants' acts of pilfering Alpha's proprietary information in order to undercut Alpha's bid and win the School Bus Contracts is not the kind of wrongful conduct that the antitrust laws forbid. Though plaintiffs label defendants' activities as "price-fixing" and "bid-rigging," two practices that are considered *per se* violations of § 1, the conduct alleged in the complaint belies such description. Price-fixing, in general terms, occurs when competitors in a given market get together and agree to sell at a uniform price. *Kahn v. State Oil Co.*, 93 F.3d 1358, 1361 (7th Cir. 1996) *rev'd on other grounds*, 522 U.S. 3 (1997); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994). Bid-rigging has a more specialized meaning in antitrust law and is analogous to bid rotation. *Heffernan*, 43 F.3d at 1150. Bid rigging or bid rotation occurs when two or more competitors agree which of them should be the low bidder for a particular job, and the others submit higher bids to make sure the designated bidder wins. *Id.* at 1146.

What happened in this case, at least as far as the complaint describes, amounts neither to price-fixing nor bid-rigging. *See BCB Anesthesia Care*, 36 F.3d at 667 ("pinning a label on conduct, such as 'tying' or 'boycott,' is not enough if the conduct does not necessarily have the pernicious effect the label suggests"). Plaintiffs allege that Meister and Wagner secretly conspired with Hackel and Southwest to use Alpha's

confidential bid information, which Meister and Wagner compiled while still working for Alpha, in preparing Southwest's bid for the School Bus Contracts. This conduct is not price-fixing because there is no allegation that any two market competitors (and there are only two actual market competitors named in this case, Alpha and Southwest) conspired to submit noncompetitive bids or to sell their student transportation services at a uniform price. *See United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979).

Nor is the complained-of conduct bid-rigging since there is no allegation that Alpha or Southwest agreed in advance of submitting their bids that one of them would offer a higher bid in order for the other to win the contracts. *See Heffernan*, 43 F.3d at 1146. Instead, the complaint repeatedly asserts that Southwest *secretly* underbid Alpha and that, had Alpha known it was going to be underbid, it would have lowered its own bid to win the contracts. Plaintiffs do not contend and no inference can be drawn from these allegations that Southwest and Alpha had any kind of agreement in place to rotate their bids on the School Bus Contracts.

Because the complaint does not allege a *per se* violation of § 1 and is otherwise devoid of any allegation that defendants' conduct restrained trade in a manner prohibited by the antitrust laws, it fails to state an antitrust claim and is therefore dismissed. *See, e.g., BCB Anesthesia Care*, 36 F.3d at 666 ("[o]nly unreasonable restraints of trade are illegal" under § 1); *42nd Parallel North*, 286 F.3d at 404 (upholding dismissal of § 1 claim due to lack of anticompetitive effect on the market).

## C. RICO Mail and Wire Fraud Claims

Plaintiffs also charge defendants with conspiring to and committing numerous acts of mail and wire fraud in violation of RICO, 18 U.S.C. § 1962 (a)-(d). Plaintiffs allege that defendants are associated in fact and constitute an enterprise within the meaning of § 1961(d) and that defendants' mail and wire fraud constitute a pattern of racketeering activity, the purpose of which was to "rig-bids" on the School Bus Contracts and acquire the contracts and Alpha's property "by fraudulent, deceptive and illegal means." To state a cause of action under RICO a plaintiff must allege with particularity (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, *Slaney*, 244 F.3d at 597, and that plaintiffs' injury occurred "by reason of" defendants' racketeering activity, *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992). Defendants in this case argue that plaintiffs' RICO claims fail as a matter of law because (1) plaintiffs fail to plead the predicate mail and wire fraud claims with the specificity required by FED. R. CIV. P. 9(b), (2) the racketeering allegations do not establish a "pattern," and (3) plaintiffs' injury did not occur by reason of defendants' alleged racketeering activity.

As an initial matter, plaintiffs' RICO claims do not satisfy Rule 9(b)'s particularity requirements. Federal rules require mail and wire fraud, the predicate acts underlying plaintiffs' RICO claims in this case, to be pleaded with particularity. FED. R. CIV. P. 9(b); *Slaney*, 244 F.3d at 597. This means that plaintiffs must allege the time, place, and content of the misrepresentations as well as the method by which they were communicated to plaintiffs. *Slaney*, 244 F.3d at 597; *Pizzo v. Bekin Van Lines*

Co., 258 F.3d 629, 631 (7th Cir. 2001). Here, plaintiffs' complaint enumerates 13 separate instances of mail and wire fraud and not one of them contains all of the factual specificity required by Rule 9(b). Most are infirm because they do not explain how defendants' fraud was communicated to plaintiffs, and some are inadequate because they do not specify when the alleged misrepresentation occurred. However, even if plaintiffs were to cure the pleading deficiencies, their RICO claims cannot be salvaged because it is clear from the facts in the complaint that plaintiffs' alleged injury – monetary losses in excess of $3,000,000 due to the lost School Bus Contracts – was not proximately caused by defendants' alleged racketeering activity.

To recover under RICO a plaintiff must show some direct relation between the injury asserted and the injurious conduct alleged. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 532-33 (1983); *Boim v. Quranic Literary Inst.*, 291 F.3d 1000, 1012 (7th Cir. 2002). "Thus, a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268-69. For plaintiffs in this case to satisfy RICO's requirement of proximate causation, they must allege a relation between their injury and the defendants' violation that is neither indirect nor remote. *Loeb Indus.*, 306 F.3d at 496. Plaintiffs allegations fall well short of establishing this necessary relationship.

From the face of the complaint, it is evident that plaintiffs view their injury as the loss of the School Bus Contracts due to defendants' theft of Alpha's proprietary bid

information and "bid-rigging." Plaintiffs portray defendants' alleged racketeering activity, however, as fraudulent use of the mail and wires to incorporate, secure loans, solicit investment income, recruit employees, and obtain insurance. In most of these allegations, plaintiffs assert that because of defendants' deception of others – including banks, investors, insurance companies, and accounting firms – defendants were able to create their racketeering enterprise. This is too remote a connection for plaintiffs to recover under RICO. If this court were to find otherwise, any individual who reads in the newspaper that a racketeering enterprise was created by falsely incorporating and swindling investors could recover under RICO whether or not the enterprise's illegal activities caused any direct harm to that individual. This kind of ephemeral injury is not the sort that RICO is designed to prevent.

Two other of plaintiffs' allegations come closer to making a direct connection between plaintiffs' injury and defendants' "racketeering" actions. Specifically, plaintiffs allege that "In or about January 2003 the defendants used emails sent through the interstate wires to solicit bid bonds and performance bonds for bids for the school district contracts" and that "defendants used the wires and mails to submit rigged bids" to the School Districts. The first of these does not help plaintiffs' case because it contains no allegation of fraud with respect to the solicitation of bid bonds or performance bonds. The accusation does not suggest that defendants were not entitled to obtain the bonds, and the complaint does not contain anything that would permit the court to so infer.

As for the second allegation, that defendants submitted a rigged bid, the court

has already explained that defendants did not as a matter of law engage in "bid-rigging" as that term is meant in antitrust law. Moreover, even if defendants used the mail or wires to submit their bid to the School Districts, and even if the bid was fraudulent, one act of fraud does not establish a "pattern" of racketeering sufficient to state a claim under RICO, especially where there is no evidence that defendants intended to repeat the criminal activity in the future. *See Pizzo*, 258 F.3d at 633 (finding that two disputes of fraud five months apart with no other evidence of ongoing criminal activity were not sufficient to establish a pattern of fraudulent activity required under RICO). Plaintiffs' RICO claims are therefore dismissed for failure to state a claim.

### III. Conclusion

Plaintiffs have failed to allege any facts that would entitle them to relief under either § 1 of the Sherman Act or § 1962 of RICO, so defendants' motions to dismiss are granted. As plaintiffs' remaining claims all seek recovery for violations of state law and no other basis for federal jurisdiction exists, the court will not address the merits of plaintiffs' state law claims. Case dismissed for lack of jurisdiction.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 15, 2004